United States District Court
Southern District of Texas
**ENTERED**
August 28, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| JORDAN ALEXANDER BLANDON PEREZ,<br>"Petitioner," | § | |
| v. | § | Civil Action No. 1:26-cv-000647 |
| TODD BLANCHE, *et al., in their official capacities,*<br>"Respondents." | § | |

**ORDER**

Before the Court is Petitioner's "Emergency Motion for Temporary Restraining Order and Expedited Hearing" (Dkt. No. 9) ("MTRO") and "Federal Respondents' Advisory and Notice of Anticipated Removal" (Dkt. No. 8) ("Advisory"). For these reasons, the MTRO (Dkt. No. 9) is **GRANTED in part.**

**I. BACKGROUND**

Petitioner is a citizen and native of Nicaragua. Dkt. No. 1 at 3. On February 14, 2024, an Immigration Judge ("IJ") granted Petitioner's request for deferral of removal to Nicaragua under the Convention Against Torture ("CAT"). Dkt. No. 1-1 at 12. Neither party appealed the IJ's decision to the Board of Immigration Appeals, and the removal order became administratively final on March 15, 2024. Dkt. No. 1 at 2.

In February 2024, Enforcement and Removal Operations ("ERO") initiated efforts to remove Petitioner to a third country, requesting that Honduras, Guatemala and Costa Rica accept him. Dkt. No. 6-1 ¶¶ 7-8. Those countries declined to accept Petitioner, and on March 25, 2024, ERO released Petitioner on an Order of Supervision. *Id.* ¶8-9.

On April 10, 2026, Petitioner was re-detained during a scheduled check-in appointment and has remained detained since. *Id*. ¶ 10. On May 21, 2026, Petitioner received notice of removal to Mexico. *Id*. ¶ 11. As of July 6, 2026, Respondents represented that there remained a significant likelihood of Petitioner's removal to Mexico in the reasonably foreseeable future. *See id*. at ¶13-14.

On August 24, 2026, Respondents filed an Advisory informing the Court that the Department of Homeland Security ("DHS") intended to effectuate Petitioner's final order of removal. *See* Dkt. No. 8. Neither Petitioner's final order of removal nor Respondents' Advisory identifies the country to which Petitioner may be removed. *See* Dkt. Nos. 1-1 & 8.

On August 27, 2026, Petitioner filed the instant MTRO. According to the MTRO, Petitioner was informed on August 27, 2026 that Respondents intended to remove him to Africa the following day. *See* Dkt. No. 9-1 at 2. Nothing in the record identifies the African country to which Respondents intend to remove Petitioner.

## II. LEGAL STANDARD

A party seeking a temporary restraining order or preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law; (3) that greater injury will result from denying the temporary restraining order than if it is granted; and (4) that a temporary restraining order will not disserve the public interest. *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013).

## III. DISCUSSION

### A. Petitioner Establishes a Substantial Likelihood of Success on the Merits of his Due Process Claim

Petitioner is likely to succeed on the merits of his claim that the Fifth Amendment entitles him to adequate notice of the country to which Respondents intend to remove him and a meaningful opportunity to raise a country-specific claim for protection.[1]

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Procedural due process constrains governmental decisions that deprive individuals of protected liberty interests. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). To determine what process is due, courts consider (1) the private interest at stake; (2) a cost-benefit analysis of the erroneous deprivation of that interest; and (3) the government's interest associated with providing any procedural protections. *Id*. at 335.

Each factor favors additional procedural protection here.

First, Petitioner's private interest is substantial. He asserts that, without adequate procedural protection, Respondents may remove him to a country where he faces torture or persecution. The preservation of bodily integrity reflects a protected liberty interest. See *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994) (en banc).

Second, the risk of erroneous deprivation is significant, and additional safeguards would have substantial value. Respondents' prior representations concerning third-country removal identified Mexico—not any country in Africa—as the contemplated destination. Nor does Respondents' recent Advisory identify a target country in Africa or otherwise indicate that

[1] The Court declines to assess the merits of Petitioner's OSUP revocation claim under the Due Process Clause at this time. *See* Dkt. No. 9-1 at 3-4.

Petitioner received notice of one. Dkt. No. 8. Instead, the record contains only Petitioner's representation that on August 27, 2026, Respondents informed him that he would be removed to Africa the following day. Without notice of the specific country of removal, Petitioner cannot meaningfully assess or assert a country-specific fear of persecution or torture. The risk of erroneous deprivation is even more acute given the IJ's prior determination that Petitioner faces likelihood of torture or persecution in Nicaragua. Dkt. No. 1-1 at 10-11. The probable value of additional safeguards is correspondingly high. Providing Petitioner notice of the specific country of intended removal and an opportunity to express a fear of persecution or torture in that country would directly mitigate the risk of erroneous deprivation and would do so at a minimal burden to Respondents.

Third, the burden on Respondents is comparatively modest. The Government undoubtedly has a significant interest in the prompt execution of removal orders. *Nken v. Holder*, 556 U.S. 418, 436 (2009). But requiring Respondents to identify the intended country of removal and afford Petitioner a meaningful opportunity to raise a country-specific fear does not materially impede the Executive Branch's ability to do so. Indeed, "[t]here is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Id.*

Considering the *Mathews* factors, the Court concludes that, under the circumstances presented here, the Due Process Clause requires Respondents to provide Petitioner notice of the specific third country to which they intend to remove him, regardless of any internal determination concerning the likelihood of torture in that country. That notice must be provided sufficiently in advance of removal to afford Petitioner a meaningful opportunity to seek relief before removal

occurs. Here, the Court finds Petitioner's request for seven calendar days' written notice "appropriate to the nature of the case." *Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025).

### B. THE REMAINING FACTORS SIMILARLY FAVOR PETITIONER.

Other factors similarly counsel in favor of granting Petitioner emergency relief. Petitioner stands to suffer irreparable harm if removed without sufficient notice and a meaningful opportunity to raise a country-specific fear of persecution or torture. *See Nunez v. Boldin*, 537 F. Supp. 578, 587 (S.D. Tex. 1982) ("Deportation to a country where one's life would be threatened obviously would result in irreparable injury."). The balance of the equities and public interest also favor limited relief. While Respondents have a significant interest in promptly executing removal orders, affording Petitioner proper notice and a meaningful chance to express fear imposes a comparatively modest burden.

## III. CONCLUSION

For these reasons, Petitioner's MTRO (Dkt. No. 9) is hereby **GRANTED in part.** It is **ORDERED** that Respondents may not remove Petitioner to any third country unless Respondents first provide Petitioner seven calendar days' written notice of the country to which he will be removed and an opportunity to assert fear of removal to that country and to seek relief through appropriate avenues. This Temporary Restraining Order shall expire **on Friday, September 11, 2026,** or by order of the Court. Petitioner's MTRO is **DENIED in part** with respect to any other requested relief. Respondents are further **ORDERED** to file a statement with the Court confirming compliance with this Order on or before **August 31, 2026.**

The Clerk of the Court is **DIRECTED** to deliver copies of this Order to the United States Attorney for the Southern District of Texas by electronic mail to USATXS.CivilNotice@usdoj.gov.

SIGNED this August 28, 2026

Rolando Olvera
United States District Judge